UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

DARRELL HUFFMAN,⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Petitioner,⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀No. 4:06CV1159 ERW
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀(FRB)
TROY STEELE,⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀)
⠀⠀⠀⠀⠀⠀Respondent.⠀⠀⠀⠀)

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

⠀⠀⠀⠀⠀This cause is before the Court on Missouri state prisoner Darrell Huffman's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. All pretrial matters were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) for appropriate disposition.

⠀⠀⠀⠀⠀On August 22, 2002, a jury in the Circuit Court of St. Louis County, Missouri, found petitioner guilty of Murder Second Degree and Armed Criminal Action. (Resp. Exh. B at 54-56.) On September 27, 2002, petitioner was sentenced to concurrent terms of thirty years' and five years' imprisonment, respectively. (Id. at 75-77.) On August 19, 2003, the Missouri Court of Appeals affirmed petitioner's judgment of conviction. State v. Huffman, 113 S.W.3d 238 (Mo. Ct. App. 2003) (per curiam). Mandate issued on September 19, 2003. Thereafter, on October 8, 2003, petitioner filed a motion for post-conviction relief pursuant to Missouri Supreme Court Rule 29.15, which was denied after an evidentiary hearing.

- 1 -

(Resp. Exhs. G, H.)  The Missouri Court of Appeals affirmed the denial of post-conviction relief on October 18, 2005.  <u>Huffman v. State</u>, 173 S.W.3d 648 (Mo. Ct. App. 2005) (per curiam).  Mandate issued on November 9, 2005.  With the assistance of counsel, petitioner filed the instant petition for writ of habeas corpus on August 2, 2006.

Petitioner is currently incarcerated at the Southeast Correctional Center in Charleston, Missouri.  In the instant petition, petitioner raises seven claims for relief:

1)  That the State failed to produce sufficient evidence for a rational jury to find beyond a reasonable doubt that petitioner killed the victim;

2)  That the trial court violated petitioner's right to a fair and impartial jury and to due process of law when it overruled petitioner's <u>Batson</u>[1] challenge to the prosecutor's jury strikes;

3)  That petitioner received ineffective assistance of trial counsel in that counsel failed to present an opening statement;

4)  That petitioner was denied his right to the effective assistance of counsel and to due process when trial counsel's actions prevented petitioner from testifying at trial despite his desire to do so;

5)  That the trial court violated petitioner's right to due process and a fair trial when it overruled petitioner's objection to the prosecutor's improper closing argument relating to additional evidence not presented to the jury;

6)  That the trial court violated petitioner's right to due process and a fair trial when it overruled petitioner's objection to the prosecutor's improper

---

[1]<u>Batson v. Kentucky</u>, 476 U.S. 89 (1986).

closing argument to the extent he attempted to inflame the passion of the jury; and

7) That petitioner received ineffective assistance of trial counsel in that counsel failed to object to the prosecutor's improper closing argument relating to victim impact evidence, including a display of the decedent's photograph to the jury.

In response, respondent contends that petitioner's claims are without merit and should be denied.

## I. Exhaustion Analysis

A petitioner must exhaust his state law remedies before the federal court can grant relief on the merits of his claims in a habeas petition. 28 U.S.C. § 2254(b)(1); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999). The Court must first examine whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988); see also Boerckel, 526 U.S. at 848. If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Smittie, 843 F.2d at 296. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the alleged unconstitutional error, or that a fundamental miscarriage of justice would occur if the Court were not to address the claims. Coleman v. Thompson, 501

U.S. 722 (1991); <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87 (1977); <u>Keithley v. Hopkins</u>, 43 F.3d 1216, 1217 (8th Cir. 1995); <u>Stokes v. Armontrout</u>, 893 F.2d 152, 155 (8th Cir. 1989). Before reviewing any claims raised in a habeas petition, the Court may require that every ground advanced by the petitioner survive this exhaustion analysis. <u>Rhines v. Weber</u>, 544 U.S. 269 (2005).

A review of the record shows petitioner's claims for relief to be exhausted inasmuch as they were raised and decided on their merits in state court.

## II. Claims Addressed on the Merits

Section 2254(d)(1) requires federal habeas courts to test the determinations of state courts "only against 'clearly established Federal law, as determined by the Supreme Court of the United States,'" and prohibits the issuance of a writ of habeas corpus "unless the state court's decision is 'contrary to, or involved an unreasonable application of,' that clearly established law." <u>Williams v. Taylor</u>, 529 U.S. 362, 379 (2000). The federal law must be clearly established at the time petitioner's state conviction became final, and the source of doctrine for such law is limited to the United States Supreme Court. <u>Id.</u> at 380-83.

A state court's decision is contrary to clearly established Supreme Court precedent when it is opposite to the Court's conclusion on a question of law or different than the Court's conclusion on a set of materially indistinguishable facts. <u>Williams</u>, 529 U.S. at 412-13; <u>Carter v. Kemna</u>, 255 F.3d 589, 591

- 4 -

(8th Cir. 2001).  A state court's determination is an unreasonable application of Supreme Court precedent if it unreasonably refuses to extend a legal principle to a new context where it should apply. Carter, 255 F.3d at 592 (citing Williams, 529 U.S. at 407). "Federal habeas relief is warranted only when the refusal was 'objectively unreasonable,' not when it was merely erroneous or incorrect."  Id. (quoting Williams, 529 U.S. at 410-11).

A.    Ground 1 – Sufficiency of the Evidence

In his first ground for relief, petitioner claims that there was insufficient evidence upon which a rational jury could find beyond a reasonable doubt that petitioner killed the victim. Specifically, petitioner contends that witnesses to the crime testified at trial that petitioner shot the victim with a .357 caliber gun as he and the victim stood facing each other. Petitioner argues, however, that physical evidence presented at trial demonstrated that the only gunshots entering the victim's body from the front came from a .25 caliber gun, and that the gunshots from a .357 caliber weapon entered the victim from the side and rear.  Because of the inconsistency between the witnesses' testimony and the physical evidence, petitioner claims that there was insufficient evidence upon which to convict him of murder. Upon review of the merits of this claim, the Missouri Court of Appeals denied petitioner relief.  (Resp. Exh. F.)

At the time petitioner's conviction became final, the law was clearly established that for due process purposes, the relevant

inquiry in reviewing the sufficiency of evidence is "whether, after
viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt."
Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also In re
Winship, 397 U.S. 358, 361-64 (1970); Sullivan v. Louisiana, 508
U.S. 275, 277-78 (1993) (citing Duncan v. Louisiana, 391 U.S. 145,
149 (1968); Sparf v. United States, 156 U.S. 51, 105-06 (1895));
Jenner v. Class, 79 F.3d 736, 742 (8th Cir. 1996). It is well
established that state law defines the elements of state-law
crimes. Fenske v. Thalacker, 60 F.3d 478, 480 (8th Cir. 1995);
Turner v. Armontrout, 845 F.2d 165, 168 (8th Cir. 1988). As such,
a state appellate court's conclusion that the evidence was
sufficient to support a criminal conviction is entitled to great
deference by a federal court. Jackson, 443 U.S. at 323.

On direct appeal, the Missouri Court of Appeals addressed
petitioner's claim of insufficiency of the evidence and summarized
the relevant facts as follows:

> Evidence at trial showed that there were
> eight gunshot wounds of entrance and seven
> bullets recovered, three of which were .357
> caliber and four that were .25 caliber. The
> medical examiner testified that one of the
> .357 caliber bullets entered through Victim's
> back. The other two bullets were recovered at
> the scene and appear to have caused the
> entrance wounds to Victim's side. Of the four
> .25 caliber bullets that were recovered, two
> entered through Victim's back and two entered
> through Victim's front.

Defendant claims that the testimony of [Leon] Davis, [Brandon] Thompson, and [Eddie] Lewis was that Defendant and Victim were standing face to face when Defendant pulled out the .357 gun and shot him three times. Because none of the .357 caliber bullets entered through the front side of Victim, Defendant asserts that the testimony is in direct contravention to the known physical facts. . . .

Leon Davis testified at trial that on the night in question, Defendant and Victim were arguing when Defendant pulled out a .357 gun and shot Victim three times. When asked about the relative position of the parties just prior to the shooting, Davis testified that Victim was standing two or three feet across from Defendant "like face to face." Davis ran out of the house after the three shots were fired.

Eddie Lewis testified at trial that Defendant and Victim were arguing, Defendant pushed Victim, and then he pulled out a .357 gun and fired three shots towards Victim. As Lewis was running out of the house after this initial round of shots, he heard five to seven additional shots that sounded like they originated from a different gun.

Brandon Thompson testified that Defendant and Victim were arguing when Defendant pulled out a .357 gun and shot Victim. Thompson testified that Victim was right in front of Defendant when he began firing. After the first shot, Thompson ran out of the house. Once outside, Thompson heard more shots.

(Resp. Exh. F, Memo. at 4-5. Footnote omitted.)[2]

In reviewing petitioner's claim, the Missouri Court of Appeals articulated the standard for addressing the sufficiency of the

---

[2]Inasmuch as petitioner does not rebut these factual findings with clear and convincing evidence, such findings are presumed by this Court to be correct. 28 U.S.C. § 2254(e)(1).

evidence (id. at 2-3) and determined that, while there were some discrepancies as to the exact position of the victim relative to petitioner at the time of the shooting, there nevertheless was sufficient evidence from which a jury could find petitioner guilty of Murder Second Degree[3] beyond a reasonable doubt, even if shots fired from petitioner's .357 caliber weapon did not enter the victim's body from the front. (Id. at 5.) Specifically, the Missouri Court of Appeals noted that only one of the three witnesses testified that the petitioner and the victim were "like face to face"; that another witness testified that the victim was in front of the petitioner but did not testify that the victim was facing the petitioner; and that another witness testified to pushing and shoving between the petitioner and victim at the time of the incident. The Missouri Court of Appeals also noted that each of the three witnesses testified that they ran from the house once the initial shots were fired, and that the shooting continued thereafter. With this evidence, the court of appeals found it

---

[3]Under Mo. Rev. Stat. § 565.021 (1984), a person commits the crime of Murder Second Degree if he:

> (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person; or

> (2) Commits or attempts to commit any felony, and, in the perpetration or the attempted perpetration of such felony or in the flight from the perpetration or attempted perpetration of such felony, another person is killed as a result of the perpetration or attempted perpetration of such felony or immediate flight from the perpetration of such felony or attempted perpetration of such felony.

reasonable to infer that the position of the petitioner and the victim "may have been constantly changing" when the petitioner pulled out the gun and began firing, especially given the testimony of a heated argument between the petitioner and the victim, the pushing and shoving, and others fleeing the area. (Resp. Exh. F, Memo. at 5.) The court of appeals determined that, to the extent there existed discrepancies in the testimony as to the position of the petitioner and the victim at the time of the shooting, such discrepancies were not so inconsistent such that there remained no probative force to the evidence presented; and, further, that any such discrepancies were for the jury to resolve upon consideration of the credibility of witnesses and the weight to be given their testimony. (Id. at 2-3, 5.)

This Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and [it] must defer to that resolution." Miller v. Leapley, 34 F.3d 582, 585 (8th Cir. 1994) (citing Jackson, 443 U.S. at 326). To the extent there existed conflicting testimony at trial as to the position of the parties at the scene, the Missouri Court of Appeals properly noted that issues of credibility are matters left within the province of the jury. When addressing claims of insufficiency of the evidence, this Court will not reweigh credibility issues. See Thiel v. Schuetzle, 200 F.3d 1120, 1122-23 (8th Cir. 1999).

In addition, a state appellate court's conclusion that the evidence was sufficient to support a criminal conviction is

entitled to great deference by a federal court. <u>Jackson</u>, 443 U.S. at 323; <u>Haymon v. Higgins</u>, 846 F.2d 1145, 1146 (8th Cir. 1988). "[W]hether the record contains sufficient evidence to establish each element of the crime beyond a reasonable doubt 'is everyday business for the state courts, grist for their mill, and it will be a rare case in which a federal court on habeas will disagree with them.'" <u>Cassell v. Lockhart</u>, 886 F.2d 178, 179 (8th Cir. 1989) (quoting <u>Moeller v. Attorney General of South Dakota</u>, 838 F.2d 309, 310 (8th Cir. 1988)).

As shown by the facts as set out by the Missouri Court of Appeals, the volatile nature of the encounter between petitioner and the victim gives rise to a reasonable inference that the physical positions of the petitioner and victim were changing during the course of this encounter. Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found that the shots fired at the victim by petitioner with a .357 caliber weapon were not necessarily directed from the front of the victim's body. Accordingly, the court of appeals' determination that there was sufficient evidence to convict petitioner of Murder Second Degree is supported by the record and entitled to deference. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's determination "resulted in a decision that was

contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the instant claim should be denied. 28 U.S.C. § 2254(d).

B.    Ground 2 – Batson Challenge

In his second claim for relief, petitioner claims that the State exercised one of its peremptory challenges in a racially discriminatory manner, in violation of Batson v. Kentucky, 476 U.S. 89 (1986), and that the trial court erred by overruling petitioner's Batson challenge. Petitioner raised this claim on direct appeal, and, upon review of the merits of the claim, the Missouri Court of Appeals denied relief. (Resp. Exh. F.)

At the time petitioner's conviction became final, the law was clearly established that the Equal Protection Clause of the United States Constitution forbids the prosecution from using its peremptory challenges to strike potential jurors "solely on account of their race." Batson v. Kentucky, 476 U.S. 79, 89 (1986). Batson dictates a three-step analysis: First, the defendant must make a prima facie showing that the prosecution has used its peremptory challenges to strike a potential juror because of race. Once the defendant has made such a showing, the prosecution bears the burden of coming forward with a race-neutral explanation for

challenging the juror in question.  Finally, the trial court must determine whether the defendant met his burden of proving purposeful discrimination.  Hernandez v. New York, 500 U.S. 352, 358-59 (1991) (citing Batson, 476 U.S. at 96-98).  In addition to bearing the ultimate burden of persuasion, under Missouri law the defendant also bears the burden of proving pretext once a race-neutral explanation has been offered.  State v. Parker, 836 S.W.2d 930, 939 (Mo. banc 1992).[4]  "The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal[.]"  Hernandez, 500 U.S. at 364 (citing Batson, 476 U.S. at 98 n.21); see also Hall v. Luebbers, 341 F.3d 706, 713 (8th Cir. 2003); Gibson v. Bowersox, 78 F.3d 372, 374 (8th Cir. 1996) (citing Jones, 938 F.2d at 841); Elem v. Purkett, 64 F.3d 1195, 1199 (8th Cir. 1995).  Factual findings of the state court are presumed to be correct unless petitioner shows otherwise by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); Smulls v. Roper, 535 F.3d 853, 861-62 (8th Cir. 2008).

_____

[4]Batson does not itself require the defendant to demonstrate pretext in the State's strikes.  Indeed, the Batson Court expressly declined "to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges."  Batson, 476 U.S. at 99.  Instead, the Court explained that "[i]n light of the variety of jury selection practices followed in our state and federal trial courts, we make no attempt to instruct these courts how best to implement our holding today."  Id.  This language of Batson "requires reviewing federal courts to respect state court procedures for treating Batson challenges."  Jones v. Jones, 938 F.2d 838, 844 (8th Cir. 1991).

A state court's factual findings on the issue of discriminatory intent largely turn on evaluation of credibility. Hernandez, 500 U.S. at 365. "In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed." Id. "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" Id. (quoting Wainwright v. Witt, 469 U.S. 412, 428 (1985)).

A review of the record here shows that during jury selection, the State exercised a peremptory challenge to strike Venireman O'Kelly, one of two African-American members of the venire panel. In response to petitioner's challenge to this strike, the prosecutor explained that O'Kelly had been arrested and was the only person on the panel that had been arrested. Petitioner argued to the trial court that such explanation was pretext inasmuch as Venireman Austin, a white male, was not struck even though he "indicated during questioning by [the State] that he had been arrested as a juvenile." (Resp. Exh. F, Memo. at 8.) Responding to this argument, the prosecutor stated that he was "not interested in juvenile arrests." (Id.) The trial court accepted the State's reasoning and denied petitioner's Batson challenge.

On direct appeal, the Missouri Court of Appeals applied the standard as set forth in Batson and its progeny and affirmed the trial court's findings, noting specifically that the State

provided a race-neutral reason for its strike of Venireman O'Kelly
and that petitioner failed to meet his burden of demonstrating the
reason to be pretextual:

> Austin was not similarly situated to O'Kelly.
> After the state's initial question about
> arrests, Austin asked for the state to clarify
> whether it was seeking information on juvenile
> or adult arrests. Austin failed to respond
> after the state indicated that it was only
> interested in adult arrests. It is apparent
> from Austin's lack of response that he was
> arrested as a juvenile but not as an adult.
> O'Kelly was the only venireperson who admitted
> to being arrested as an adult.
>
> . . . The charges in this case involved
> murder in the first degree and armed criminal
> action. We find it was proper for the state's
> focus to be on the more serious and recent
> adult arrests of the venire panel rather than
> any potentially less serious or distant
> juvenile arrests. In fact, even the
> prosecutor indicated that he had been arrested
> for violating curfew as a juvenile.

(Resp. Exh. F, Memo. at 8. Citation omitted.)

The court's factual finding that the State's articulated
reason for its strike was race-neutral and not pretextual was not
an unreasonable determination of the facts in light of the evidence
presented in the state court proceedings. See Purkett v. Elem, 514
U.S. 765, 769 (1995); see also Smulls, 535 F.3d at 864-85 (state
appellate court's findings of fact presumed to be correct).
Indeed, the significance of the distinguishing nature of juvenile
versus adult arrests was made apparent by the prosecutor's
admission to the court that he, himself, had been arrested as a

juvenile. In these circumstances, it cannot be said that the prosecutor's reason for his strike of Venireman O'Kelly on account of his being arrested as an adult, when coupled with his failure to strike Venireman Austin who had been arrested as a juvenile, was either implausible or constituted a "fantastic justification" for the strike. Cf. Purkett, 514 U.S. at 768; Smulls, 535 F.3d at 864 (under AEDPA, federal court can grant habeas petition only if state court was unreasonable in crediting prosecutor's race-neutral explanations for Batson challenge). As such, petitioner has failed to overcome the presumption of correctness accorded to the state court's conclusion that the prosecutor did not act with discriminatory intent in his strikes. See Simmons v. Luebbers, 299 F.3d 929, 942 (8th Cir. 2002).

Based on the above, the state court's decision denying petitioner relief is well based on law and fact. This Court is unaware of any "clearly established Federal law, as determined by the Supreme Court of the United States" of which the court's decision runs afoul, nor has petitioner demonstrated such. Therefore, it cannot be said that the state court's adjudication of the instant claim "resulted in a decision that was contrary to, or involved an unreasonable application of," clearly established federal law. 28 U.S.C. § 2254(d)(1). Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §

2254(d)(2).  As such, the instant claim should be denied.  28
U.S.C. § 2254(d).

C.    Grounds 3 and 4 – Assistance of Trial Counsel

        In Grounds 3 and 4 of the instant petition, petitioner
claims that he received ineffective assistance of trial counsel in
that counsel failed to make an opening statement and did not allow
petitioner to testify at trial, despite his desire to do so.
Petitioner raised these claims on appeal of the denial of his Rule
29.15 post-conviction motion.  Upon review of the merits of the
claims, the Missouri Court of Appeals denied petitioner relief.
(Resp. Exh. K.)

        At the time petitioner's conviction became final, the law
was clearly established that the Sixth Amendment guarantees a
criminal defendant the right to effective assistance of counsel.
Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail on
a claim of ineffective assistance of counsel, a habeas petitioner
must show that 1) his counsel's performance was deficient, and 2)
the deficient performance prejudiced his defense.  Id. at 687.  In
evaluating counsel's performance, the basic inquiry is "whether
counsel's assistance was reasonable considering all the
circumstances."  Id. at 688.  The petitioner bears a heavy burden
in overcoming "a strong presumption that counsel's conduct falls
within the wide range of reasonable professional assistance."  Id.
at 689.  Indeed, a strong presumption exists that counsel's conduct
"might be considered sound trial strategy."  Strickland, 466 U.S.

at 689 (internal quotation marks and citation omitted).  Decisions

relating to trial strategy are "virtually unchallengeable."  <u>Id.</u> at

690.  To establish prejudice, the petitioner "must show that there

is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.  A

reasonable probability is a probability sufficient to undermine

confidence in the outcome."  <u>Id.</u> at 694.

    1.    *Failure to Make an Opening Statement*

        In his third ground for relief, petitioner claims that

counsel was ineffective by failing to make an opening statement at

the trial of the cause.  Petitioner argues that an opening

statement would have highlighted the inconsistencies in evidence to

be presented by the State, and that counsel's failure to so

highlight these inconsistencies gave the State an unfair advantage

throughout the trial.  On post-conviction appeal, the Missouri

Court of Appeals articulated the <u>Strickland</u> standard for

establishing ineffective assistance of counsel and denied

petitioner relief on this claim.  (Resp. Exh. K.)

        The court of appeals reviewed the testimony of counsel

adduced at the evidentiary hearing on petitioner's post-conviction

motion and determined counsel's decision not to make an opening

statement to be a matter of trial strategy.

                Counsel testified that she chose not to
            present an opening statement as a matter of
            trial strategy.  Counsel acknowledged the
            benefits of presenting an opening statement
            and admitted in retrospect that she "probably

> should have made an opening statement."
> However, counsel indicated she did not want to
> be "locked into" a particular theory of
> defense given the uncertainty as to whether
> one of the State's witnesses would testify.
> Moreover, counsel stated there was a
> possibility that Movant might exercise his
> right to testify, and if he wished to, she
> wanted to be able to work that into the
> defense. Given counsel's reasoning, we find
> the decision not to present an opening
> statement was trial strategy and did not
> constitute ineffective assistance of counsel.

(Resp. Exh. K, Memo. at 5.)

The determination whether to make an opening statement is a decision left to counsel as a matter of trial strategy. See United States v. Washington, 198 F.3d 721, 723-24 (8th Cir. 1999) (strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waiving a jury trial, testifying on one's own behalf, and taking an appeal); see also Fox v. Ward, 200 F.3d 1286, 1296 (10th Cir. 2000) ("[I]t is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel."); Huggington v. Nuth, 140 F.3d 572, 583 (4th Cir. 1998) ("Although it may be unusual to waive an opening statement, such a decision is essentially tactical in nature, and not objectively unreasonable."); Hunt v. Nuth, 57 F.3d 1327, 1332 (4th Cir. 1995) (holding that even when trial strategy expert testified that "reserving opening statement is uncommon and highly criticized by

experts in trial advocacy, . . . such a decision is fundamentally tactical and within the range of reasonably competent representation .”); <u>United States v. Salovitz</u>, 701 F.2d 17 (2d Cir. 1983) (“It is common knowledge that defense counsel quite often waive openings as a simple matter of trial strategy.”).  In the circumstances of this case, as determined by the post-conviction motion court and the Missouri Court of Appeals, it was reasonable for counsel as a matter of trial strategy not to provide an opening statement given the uncertainty of the evidence to be presented at trial.  Indeed, claims of ineffectiveness have been brought against counsel for making representations during opening statements which did not bear out during trial.  <u>See</u>, <u>e.g.</u>, <u>Francis v. Miller</u>, 557 F.3d 894 (8th Cir. 2009); <u>Washington v. Bowersox</u>, 340 F.3d 667 (8th Cir. 2003) (and cases cited therein);  <u>Otey v. Grammar</u>, 859 F.2d 575 (8th Cir. 1988).  Merely because counsel’s reasonable strategy was unsuccessful does not render counsel’s assistance ineffective. <u>James v. Iowa</u>, 100 F.3d 586, 590 (8th Cir. 1996).

In its opinion, the Missouri Court of Appeals set out the <u>Strickland</u> standard for ineffective assistance of counsel and found counsel’s challenged conduct relating to her determination not to make an opening statement to constitute sound trial strategy, and thus not to rise to the level of ineffective assistance.  This decision was well based on law and fact and was not “contrary to, or involved an unreasonable application of," clearly established federal law.  28 U.S.C. § 2254(d)(1).  Nor has petitioner shown

that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). As such, the claim raised in Ground 3 of the instant petition should be denied. 28 U.S.C. § 2254(d).

2. *Failure to Permit Petitioner to Testify*

In his fourth ground for relief, petitioner claims that he received ineffective assistance of trial counsel in that counsel coerced him not to testify, despite his expressed desire to do so. Petitioner contends that the resulting waiver of his right to testify was unknowing, unintelligent and involuntary on account of counsel's ineffectiveness. After an evidentiary hearing at which petitioner and trial counsel testified, the post-conviction motion court credited counsel's testimony over that of the petitioner and found the credible evidence to demonstrate that counsel did not coerce petitioner's decision not to testify. On post-conviction appeal, the Missouri Court of Appeals deferred to the motion court's credibility findings and denied petitioner relief on this claim of ineffective assistance of counsel. (Resp. Exh. K, Memo. at 3-4.)

It is well settled that an individual's right to testify on his own behalf in defense of a criminal charge is a fundamental constitutional right. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987) (and cases cited therein). The decision whether to exercise or

waive the right to testify is "of such moment" that it "cannot be made for the defendant by a surrogate." <u>Florida v. Nixon</u>, 543 U.S. 175, 187 (2004); <u>see also</u> <u>El-Tabech v. Hopkins</u>, 997 F.2d 386, 388 (8th Cir. 1993); <u>United States v. Long</u>, 857 F.2d 436, 447 n.9 (8th Cir. 1988). Instead, the defendant is the "ultimate authority" in this determination. <u>Jones v. Barnes</u>, 463 U.S. 745, 751 (1983); <u>Nixon</u>, 543 U.S. at 187. As such, counsel must both consult with the defendant regarding his right to testify and obtain his consent to the recommended course of action. <u>Nixon</u>, 543 U.S. at 187. Although the decision whether or not to testify rests with the defendant, counsel's advice not to testify may be a matter of sound trial strategy in the circumstances of the case. <u>El-Tabech</u>, 997 F.2d at 390; <u>see also</u> <u>Frey v. Schuetzle</u>, 151 F.3d 893, 899 (8th Cir. 1998); <u>Sumlin v. United States</u>, 46 F.3d 48, 49 (8th Cir. 1995).

A review of the post-conviction evidentiary hearing shows petitioner to have testified on direct examination that he advised his counsel that he wanted to testify at trial but that counsel told him "she wouldn't let [him] testify." (Resp. Exh. G at 8.) Petitioner testified that counsel expressed concern regarding petitioner's criminal history and advised that the prosecutor's use of such criminal history would not "be good" for the trial. (<u>Id.</u> at 8-9.) Petitioner testified that he did not know much about the law and took his counsel's advice not to testify because she was his lawyer and "knew what was best" for him. (<u>Id.</u> at 9-10.)

Petitioner testified that he felt he did not have a choice about testifying because "she was my lawyer[.]" (<u>Id.</u> at 10.) On cross-examination, petitioner testified that counsel did not physically hold him back from taking the witness stand at trial, but instead told petitioner that it would not be in his best interest to testify and that she would not allow it. (Resp. Exh. G at 55.)

Petitioner also testified at the hearing regarding the testimony he would have given had he testified at trial, and specifically, that he was present at the scene and witnessed an argument between the victim and Leon Davis; that he witnessed the victim pull out a gun during the argument, after which Leon pulled a gun and began shooting; and that he fled the scene with Eddie Lewis when the shooting began, after which Leon joined them wearing bloodied clothing. (Resp. Exh. G at 11-27.) On cross-examination, however, petitioner testified in response to the prosecutor's questioning that his now-proffered testimony differed from the proffered testimony as described in his post-conviction motion; differed from a statement given to the police that he was last in the house two days prior to the murder and had not seen the victim since earlier in the afternoon on the date of the murder; differed from answers given during a polygraph examination that it was too dark in the house for petitioner to see what was happening or who was shooting; and differed from a statement given to a probation officer during the presentence investigation that he was not present at the shooting and only gained knowledge of the shooting

from what he heard on the street. (Id. at 35-38.) Petitioner also testified to his past criminal history, and specifically, that he had been convicted of unlawful use of a weapon; had been arrested for assault, various drug charges, and "shooting a young man in the face"; and had been involved in other charges, including possession of stolen property and flight to avoid prosecution. (Id. at 9, 30-33.) In concluding this cross-examination, petitioner again responded to the prosecutor that his counsel would not allow him to testify at trial: "She wouldn't allow it. You was going to drill me like you're doing now. You'd bring up my past history and I'd be convicted on that alone." (Id. at 56.)

Trial counsel also testified at the evidentiary hearing regarding petitioner not testifying at trial:

> A    . . . [I]t was something that we discussed during the course of my representation about whether or not he would testify.
>
> Q    Did you ever tell him it was your choice and not his as far as testifying?
>
> A    No.
>
> Q    Did you tell him it was his choice and his choice alone?
>
> A    Yes.
>
> Q    Did you ever coerce him to not testify?
>
> A    I don't believe I ever coerced him into not testifying.
>
> Q    Did you ever tell him, "I can't let you testify. You're not testifying"?

A    No.

    Q    Did you advise him as to the pros and cons of
         testifying?

    A    We talked about the benefits and potential
         cons in testifying, yes.

(Resp. Exh. G at 86.)

The post-conviction motion court found counsel's testimony that she did not coerce petitioner into not testifying, but rather advised him as to the pros and cons of testifying, to be credible. The court found petitioner's testimony that he was coerced into not testifying not to be credible. (Resp. Exh. H at 88.) On post-conviction appeal, the court of appeals reviewed the testimony adduced on petitioner's post-conviction motion, deferred to the motion court's finding, and determined there not to be credible evidence that counsel coerced petitioner into not testifying on his own behalf. (Resp. Exh. K, Memo. at 3-4.) Because there was no credible evidence to support petitioner's allegation that counsel coerced him not to testify, the Missouri Court of Appeals denied petitioner relief on his claim of ineffective assistance of counsel. (Id. at 4.)

As demonstrated by the testimony adduced at the evidentiary hearing and the state courts' factual findings made thereon, counsel did not coerce petitioner into not testifying at trial. Instead, as testified to by the petitioner, counsel advised petitioner not to testify in light of the prosecutor's anticipated

cross examination, and petitioner heeded that advice. Indeed, petitioner testified that counsel advised that if he testified at trial, he would be "drill[ed]" by the prosecutor as petitioner admitted had been done during the hearing on the post-conviction motion. (Resp. Exh. G at 56.)[5] Petitioner testified that in light of counsel's advice, he felt he had no choice but not to testify. Despite his continued desire to testify, petitioner admitted that he relied on counsel's advice because she knew what was best. On the record before the state courts, it is apparent that counsel consulted with the petitioner regarding his right to testify, advised against it, and proceeded on petitioner's decision not to testify upon being so advised. Such conduct on the part of counsel in the circumstances of this case does not constitute ineffectiveness. See Nixon, 543 U.S. at 187; El-Tabech, 997 F.2d at 390; Frey, 151 F.3d at 899; Sumlin, 46 F.3d at 49. As such, the state court's decision denying petitioner's claim that he was coerced by counsel not to testify was neither contrary to nor an unreasonable application of clearly established federal law. Nor has petitioner shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

---

[5]Such cross examination revealed the extensive nature of petitioner's criminal history as well as numerous inconsistencies in the statements given by petitioner in relation to his involvement in the crime.

proceeding." 28 U.S.C. § 2254(d)(2). Accordingly, the claim raised in Ground 4 of the instant petition should be denied. 28 U.S.C. § 2254(d).

D.   <u>Grounds 5-7 - Closing Argument</u>

        In Grounds 5, 6 and 7 of the instant petition, petitioner raises various claims relating to comments made by the prosecutor during closing argument. In Grounds 5 and 6, petitioner claims that the trial court erred in overruling certain objections made by defense counsel during closing argument, and specifically objections to the prosecutor's reference to additional evidence not presented at trial and his attempt to inflame the passions of the jury through his plea to stop the violence. In Ground 7, petitioner claims that his trial counsel was ineffective for failing to object to that portion of the prosecutor's closing argument during which he displayed the victim's photograph and made improper argument as to victim impact evidence. On direct and post-conviction appeals, the Missouri Court of Appeals denied petitioner's claims for relief. (Resp. Exhs. F, K.)

        1.   *Grounds 5 and 6 – Prosecutorial Misconduct*

        In his closing argument, the prosecutor argued to the jury that petitioner's reason for shooting the victim was because the victim had been "dissing [him] for weeks." (Resp. Exh. A at 494.) The prosecutor then continued in his argument: "That's why that 17 year old kid was killed. You should be outraged by that.

- 26 -

You have a chance to stop the senseless violence and stop the madness; stop the killing." (Id.)  Defense counsel's objection to this argument was overruled by the court.  (Id.)  During petitioner's closing argument, defense counsel argued that the physical evidence did not support a conviction and that the reason therefor was because of petitioner's innocence.  Counsel then stated:  "The State has brought in all the evidence that they can summon against him."  (Id. at 498-99.)  The prosecutor objected to this last statement:  "I'm going to object to 'all we had'.  That misstates the facts of this case."  (Resp. Exh. A at 499.)  The trial court then instructed the jury to be guided by their recollection of the evidence.  (Id.)  Defense counsel requested a mistrial, arguing that the prosecutor's objection had the effect of indicating to the jury that there was other evidence that was not presented to the jury of which the prosecutor had personal knowledge.  (Id.)  The trial court denied the motion.  (Id. at 500.)  In the instant claims for habeas relief, petitioner argues that he was denied his right to due process and to a fair trial when the trial court overruled his objections to these comments inasmuch as the prosecutor's "stop the violence" comment sought to inflame the fearful passion of the jury, and the "all we had" comment implied personal knowledge of additional facts supporting petitioner's guilt.

As an initial matter, the undersigned notes that the Missouri Court of Appeals reviewed the instant claims for plain

error inasmuch as petitioner failed to preserve the specific claims for appellate review. (Resp. Exh. F, Memo. at 9-13.) In Hornbuckle v. Groose, 106 F.3d 253, 257 (8th Cir. 1997), the Eighth Circuit recognized that a decisional split within the circuit allows the Court to choose whether to review for plain error a claim reviewed by the state court only for plain error or whether to determine such limited state court review not to cure an otherwise procedurally defaulted claim. In Burns v. Gammon, 173 F.3d 1089 (8th Cir. 1999), the Eighth Circuit suggested that, in such circumstances, the federal habeas court undertake the same review as the state court in determining a petitioner's claim:

> We think we should do what the state court did: give the point plain-error review. In this way, we are not encroaching at all on the authority of the state courts; we are fully respecting their procedural rule; and we are giving the argument the same degree of attention that the state courts gave it.

Id. at 1095.

See also Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000) (addressed merits of claim for plain error inasmuch as state court plain error review did not preclude federal consideration). In Shelton v. Purkett, however, the Eighth Circuit recently stated that, assuming there to be no procedural default when the state court conducts plain error review, "the AEDPA mandates a deferential review of a state court decision. We may not simply conduct our own plain error review de novo." 563 F.3d 404, 408

(8th Cir. 2009) (internal citation omitted).  In accordance with
Shelton, therefore, the undersigned determines to review
petitioner's instant claims under the AEDPA's deferential standard
of review rather than for plain error.

At the time petitioner's conviction became final, the law
was clearly established that in determining whether a prosecutor's
comments made during closing argument violated a defendant's due
process rights, the pertinent inquiry is "whether the prosecutors'
comments 'so infected the trial with unfairness as to make the
resulting conviction a denial of due process.'" Darden v.
Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v.
DeChristoforo, 416 U.S. 637, 643 (1974)).  The test applied to
determine whether error makes a trial fundamentally unfair is
whether there is a reasonable probability that the verdict might
have been different had the error not occurred.  Lisenba v.
California, 314 U.S. 219, 236 (1941); Hamilton v. Nix, 809 F.2d
463, 470 (8th Cir. 1987).

Here, the Missouri Court of Appeals articulated the
standard as set out in Darden and Lisenba, and determined that
petitioner failed to show that the prosecutor's challenged comments
had a decisive effect on the verdict, that is, that there was
reasonable probability that, in the absence of the comments, the
jury's verdict would have been different. (Resp. Exh. F, Memo. at
10.)  The court of appeals noted there to be strong evidence of
petitioner's guilt, specifically noting that there were three

eyewitnesses who identified the petitioner as the perpetrator of the crime. (Id. at 11, 13.) The court of appeals also noted that the challenged comments were isolated and brief, and were not emphasized by the State. (Id.) With respect to the prosecutor's comment regarding additional evidence, the court of appeals further noted that the trial court provided a cautionary instruction to the members of the jury that they were to be guided by their recollection of the evidence. (Id. at 13.)[6] Under the totality of the circumstances, it cannot be said that in view of the trial court's instructions and the strength of the State's case against petitioner, the verdict would have been different if the prosecutor had not made these isolated remarks. Kellogg v. Skon, 176 F.3d 447, 451-52 (8th Cir. 1999); see also Sublett v. Dormire, 217 F.3d 598, 601 (8th Cir. 2000) (jury has common sense ability to put aside overzealous advocacy with help of court's instruction that arguments are not evidence); Griffin v. Delo, 33 F.3d 895, 906 (8th Cir. 1994); United States v. Skarda, 845 F.2d 1508, 1511 (8th Cir. 1988) (in totality of circumstances, improper remark amounted to "only an insignificant blemish").

The Missouri Court of Appeals determined that the prosecutor's challenged statements made during closing argument did

---

[6]The undersigned also notes that in its prepared instructions to the jury, the trial court instructed that closing arguments were not evidence and that it was the jury's duty to be governed in its deliberations by the evidence as they remembered it. (Resp. Exh. B at 48.)

not have a decisive effect on the jury's verdict in this cause.  In light of the above, and giving due deference to the state court's determination on these claims, it cannot be said that the challenged statements influenced the jury such that a reasonable probability exists that the verdict might have been different had the alleged errors not been made.  <u>See</u> <u>Donnelly</u>, 416 U.S. at 643-45.  Accordingly, the state court's determination to deny relief on petitioner's claims that the trial court erred in overruling his objections to the prosecutor's comments was not contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States.  Petitioner's claims raised in Grounds 5 and 6 of the instant petition should therefore be denied.  28 U.S.C. § 2254(d).

     2.   *Ground 7 - Ineffective Assistance of Counsel*

     In his closing argument, the prosecutor made the following comments with respect to the victim:

> I want to show you something here, and I'm not going to waive [sic] around the autopsy photographs.  I'm not going to waive [sic] around the crime scene photographs and say, "This is Brian Sledge," because that's not Brian Sledge, but this is Brian Sledge.  I want everybody to take a look at it.  He's not a number.  He's not a statistic.  He had a family and they loved him and he didn't deserve to die alone on a cold floor in an abandoned house.  He's not a number.  He's not a statistic.

(Resp. Exh. A at 494.)

- 31 -

Defense counsel did not object to this argument nor to the prosecutor's presentation of the photograph of the decedent/victim. Petitioner claims that counsel was ineffective for her failure to object inasmuch as such statements and conduct constituted improper argument on victim impact evidence.

At the evidentiary hearing on petitioner's post-conviction motion, counsel testified that she believed that the prosecutor's argument was improper, but offered no explanation for her failure to object. (Resp. Exh. G at 79-83.) The motion court determined that counsel's failure to object did not amount to ineffective assistance because the photograph of the victim was properly admitted as evidence at trial, and the prosecutor in his comments regarding the photograph did not argue the character of the victim or present him in a favorable light. (Resp. Exh. H at 90.) On post-conviction appeal, the Missouri Court of Appeals reviewed the closing arguments in their entirety and noted defense counsel to have objected on twelve separate occasions. (Resp. Exh. K, Memo. at 6.) The court of appeals determined that petitioner failed to establish that if counsel had objected in this one instance, the result of the trial would have been different. (Id.)

Under Strickland, petitioner must show "that counsel's representation fell below an objective standard of reasonableness," 466 U.S. at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [trial] would have been different." Id. at 694. The Court's "scrutiny of

- 32 -

counsel's performance must be highly deferential," id. at 689, and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

In the instant case, the court of appeals noted that defense counsel objected to the prosecutor's closing argument on twelve separate occasions. A review of the record shows such objections to have been based on the prosecutor's alleged improper argument as to burden of proof, facts outside the evidence, misstatement of the evidence, improper personalization, and implied knowledge outside the case. (Resp. Exh. A at 489-511.) The trial court sustained some of these objections and overruled others. (Id.) The alleged improper argument challenged here relating to victim impact evidence constituted a brief part of the prosecutor's closing argument and came on the heels of two simultaneous objections which had been overruled. (Id. at 493-94.) In addition, as noted supra, the Missouri Court of Appeals had previously determined on direct appeal that there was strong evidence of petitioner's guilt. On this record, it cannot be said that had counsel objected to this limited portion of the prosecutor's closing argument, the result of the trial would have been different. See Seehan v. State of Iowa, 72 F.3d 607, 612 (8th Cir. 1995); Garrett v. United States, 78 F.3d 1296, 1304 (8th Cir. 1996).

In addition, the undersigned notes that the post-conviction motion court determined the prosecutor's challenged

comments not to constitute improper argument. Counsel cannot be said to be ineffective for failing to object to that which is proper. See Lockhart v. Fretwell, 470 U.S. 1, 8 (1985) (an attorney's failure to make an objection will not alter the outcome of a proceeding if the objection is meritless, and hence would not have been sustained); see also Burton v. Dormire, 295 F.3d 839, 846 (8th Cir. 2002) (cannot fault counsel for failing to raise issue if no relief could possibly have been obtained); Blankenship v. United States, 159 F.3d 336, 338 (8th Cir. 1998) (no prejudice from counsel's failure to pursue non-meritorious issue).

Finally, the undersigned notes that the Eighth Circuit has observed that counsel's decisions about whether to object to a statement in a prosecutor's closing argument are strategic decisions. See Bussard v. Lockhart, 32 F.3d 322, 324 (8th Cir. 1994); Meis v. Wyoming Dep't of Corrections, 9 F.3d 695, 697 (8th Cir. 1993); Girtman v. Lockhart, 942 F.2d 468, 474 (8th Cir. 1991); Hayes v. Lockhart, 852 F.2d 339, 346 (8th Cir. 1988), vacated on other grounds, 491 U.S. 902 (1989). "Counsel's decision to object during the prosecutor's summation must take into account the possibility that the court will overrule it and that the objection will either antagonize the jury or underscore the prosecutor's words in their minds." Bussard, 32 F.3d at 324. "Thus, the question we have to ask is not whether the prosecutor's comments were proper, but whether they were so improper that counsel's only defensible choice was to interrupt those comments with an

objection." <u>Id.</u>  Here, although counsel deemed the challenged comment to be improper, she did not object.  As demonstrated by the post-conviction motion court's subsequent determination that the challenged comment was not improper, it cannot be said that counsel's only defensible choice to the prosecutor's statement was to interrupt with an objection.  Nor can it be said that counsel's determination not to object to the statement was unreasonable given the trial court's overruling of her objections made immediately prior to this comment.  Counsel may have risked antagonizing the jury with another non-meritorious objection.

For the above stated reasons, the state court's decision to deny petitioner relief on the instant claim of ineffective assistance of counsel was well based on law and fact and was not "contrary to," nor involved an "unreasonable application of" clearly established federal law.  28 U.S.C. § 2254(d)(1).  In addition, petitioner has not shown that the court's determination "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As such, the claim raised in Ground 7 of the instant petition should be denied. 28 U.S.C. § 2254(d).

Accordingly,

**IT IS HEREBY RECOMMENDED** that petitioner Darrell

Huffman's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docket No. 1) be dismissed without further proceedings.

The parties are advised that they have to and including **July 6, 2009,** by which to file any written objections to this Report and Recommendation.  Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).


_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE


Dated this  *22nd*  day of June, 2009.