UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARRELL HUFFMAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:06CV01159 ERW |
| ) | |
| TROY STEELE, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on the Report and Recommendation of United States Magistrate Judge Frederick R. Buckles [doc. #10], pursuant to 28 U.S.C. § 636(b). Petitioner has filed Objections to the Report and Recommendation [doc. #12]. When a party objects to a magistrate's report and recommendation, the Court must conduct a *de novo* review of the portions of the report, findings, or recommendations to which the party objects. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)).

## **I. BACKGROUND**[1]

On August 22, 2002, Petitioner was convicted of second degree murder and armed criminal action. He was later sentenced to concurrent prison terms of thirty years and five years for the crimes. On August 19, 2003, the Missouri Court of Appeals affirmed Petitioner's judgment of conviction. *See State v. Huffman*, 113 S.W.3d 238 (Mo. Ct. App. 2003) (per curiam). In October 2003, Petitioner filed a motion for post-conviction relief under Missouri

---

[1] The Magistrate Judge's Report and Recommendation recites the facts and procedural history of this case, therefore this Court will not repeat it here. The Court will, however, note those facts which are pertinent to the discussion.

1

Supreme Court Rule 29.15, and the Court denied the motion after an evidentiary hearing. Thereafter, Petitioner appealed the judgment, and the Missouri Court of Appeals affirmed the denial of post-conviction relief in October 2005. *See Huffman v. State*, 173 S.W.3d 648 (Mo. Ct. App. 2005) (per curiam).

Petitioner filed a petition for writ of habeas corpus [doc. #1] with this Court on August 2, 2006. His petition sets forth seven grounds for federal habeas relief: (1) that the State failed to produce sufficient evidence for a rational jury to find beyond a reasonable doubt that Petitioner killed the victim; (2) that the trial court violated Petitioner's right to a fair and impartial jury and to due process of law when it overruled Petitioner's *Batson* challenge after the Prosecutor used a peremptory strike on Rashod O'Kelly, an African-American venireperson; (3) that Petitioner received ineffective assistance of trial counsel in that his counsel failed to present an opening statement; (4) that Petitioner was denied his right to the effective assistance of counsel and to due process of law when trial counsel's actions prevented Petitioner from testifying at trial despite his desire to do so; (5) that the trial court violated Petitioner's right to due process and a fair trial when it overruled Petitioner's objection to the Prosecutor's improper closing argument relating to additional evidence not presented to the jury; (6) that the trial court violated Petitioner's right to due process and a fair trial when it overruled Petitioner's objection to the Prosecutor's improper closing argument to the extent he attempted to inflame the passion of the jury; and (7) that Petitioner received ineffective assistance of trial counsel in that his counsel failed to object to the Prosecutor's improper closing argument relating to victim impact evidence. Magistrate Judge Frederick R. Buckles rejected each of Petitioner's seven grounds for relief in his Report and Recommendation [doc. #10]. Petitioner objected to each of the Magistrate Judge's findings [doc. # 12].

## II. STANDARD OF REVIEW

"A state prisoner who believes that he is incarcerated in violation of the Constitution or laws of the United States may file a petition for writ of habeas corpus in federal court pursuant to 28 U.S.C. § 2254." *Osborne v. Purkett*, 411 F.3d 911, 914 (8th Cir. 2005). In order for a federal court to grant an application for a writ of habeas corpus brought by a person in custody by order of a state court, the petitioner must show that the state court decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). "A state court's decision is contrary to clearly established law if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case." *Tokar v. Bowersox*, 198 F.3d 1039, 1045 (8th Cir. 1999) (internal quotation omitted). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clark*, 387 F.3d 785, 790 (8th Cir. 2004).

## III. DISCUSSION

### A. SUFFICIENT EVIDENCE TO CONVICT FOR SECOND DEGREE MURDER (Claim One)

In his first ground for habeas relief, Petitioner argues that there was insufficient evidence upon which a rational jury could find beyond a reasonable doubt that Petitioner committed the crime of second degree murder. State law defines the essential elements of state crimes. *Miller v. Leapley*, 34 F.3d 582, 585 (8th Cir. 1994). In Missouri, a person commits the crime of second degree murder if he "knowingly causes the death of another person or, with the purpose of

3

causing serious physical injury to another person, causes the death of another person." Mo. Rev. Stat. § 565.021 (1984). When reviewing the sufficiency of evidence, the Court's review "is limited to determining 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Gibbs v. Kemna*, 192 F.3d 1173, 1175 (8th Cir. 1999) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). During its review, the Court "must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state" and "must defer to that resolution." *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). Further, the Court is "not permitted to conduct [its] own inquiry into witness credibility; that is a task reserved to the jury." *Robinson v. LaFleur*, 225 F.3d 950, 954 (8th Cir. 2000).

In this case, the prosecution set forth substantial evidence that Petitioner committed the crime of second degree murder. The physical evidence showed that the Decedent suffered eight gunshot wounds. At the crime scene, police officers recovered three .357 caliber bullets and four .25 caliber bullets. The medical examiner who performed the autopsy testified that he removed one .357 caliber bullet and four .25 caliber bullets from the Decedent's body. At trial, the medical examiner testified that one of the .357 caliber bullets entered through Decedent's back, and that the two other .357 bullets probably caused the entrance wounds to Decedent's side. The Medical Examiner also testified that two of the .25 caliber bullets recovered entered through Decedent's front while the other two entered through his back.

The Prosecution also offered eye witness testimony of the shooting from Leon Davis, Eddie Lewis, and Brandon Thompson. All three testified that Petitioner pulled out a .357 caliber gun and shot Decedent. The witnesses provided inconsistent testimony concerning the number of shots fired and positions of the parties during the shooting. Davis testified that Petitioner shot

Decedent three times with a "rusty" .357 handgun while standing two or three feet from Decedent "like face to face." Lewis testified that Petitioner pushed the Decedent before pulling out a "chrome" .357 gun and shooting him three times. He also testified that he heard five to seven additional shots as he ran out of the house. Thompson testified that Petitioner shoved Decedent prior to shooting him. He also testified that the Decedent was right in front of the Petitioner when the shooting occurred, and he admitted that he ran out of the house after the first shot.

Viewing these facts in the light most favorable to the prosecution, the Court finds that the trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The conviction did not result in a decision that was based on an unreasonable determination of the facts produced at trial or an unreasonable application of federal law. Although the witness accounts were not entirely consistent, the level of inconsistency does not rise to the level of being "unreasonable." Based on the evidence, it is reasonable to believe that the position of the parties was changing during the altercation. Prosecution put forth sufficient evidence to establish that Petitioner shot the Decedent with a .357 caliber weapons even if all the bullets did not enter from Decedent's front side.

The fact that one witness described the gun as being "chrome" and another described it as being "rusty" also does not make the jury's verdict unreasonable. Given the circumstances and speed in which the event occurred, it is reasonable to believe that the witnesses were not able to view the gun for very long, and as result, a reasonable juror could conclude that this resulted in varied descriptions of the gun. The jury in this case had the ability to weigh the credibility of the witnesses, and the Court finds that their conclusions were reasonable given the evidence. Lastly, the fact that the Prosecution did not offer evidence of anyone firing a .25 caliber weapon does not disprove the fact that Petitioner fired at least one .357 caliber bullet at the victim. In light of these

facts, the Court finds the evidence is more than sufficient to establish the essential elements of second degree murder beyond a reasonable doubt.

B.  *BATSON* **CHALLENGE TO PROSECUTOR STRIKING JUROR (Claim Two)**

In his second claim for habeas relief, Petitioner argues that the trial court violated his right to a fair and impartial jury and due process of the law during voir dire by allowing the State to use a peremptory challenge to strike Rashod O'Kelly, an African American venireperson. Specifically, Petitioner alleges that the State exercised the peremptory challenge in a racially discriminatory manner, in violation of *Batson v. Kentucky*, 476 U.S. 89 (1986). Petitioner claims that the state court's decision to overrule Petitioner's *Batson* challenge involved an unreasonable application of established Federal Law and resulted in a decision based on an unreasonable determination of the facts in light of the evidence presented at trial.

Under *Batson*, a trial court must follow a three-step inquiry. The trial court first determines whether Petitioner made a prima facie showing that the Prosecutor's peremptory strike was based on race. E.g., *Rice v. Collins*, 546 U.S. 333, 338 (2006); *Smulls v. Roper*, 535 F.3d 853, 859 (8th Cir. 2008). Second, if the Petitioner makes out a prima facie showing, the burden shifts to the Prosecutor to present a race-neutral explanation for striking the juror. *Id.* The reason provided by the Prosecutor need not be "persuasive, or even plausible" as long as it is not inherently discriminatory. *Id.* The burden then shifts back to the Petitioner to demonstrate "purposeful discrimination" by the Prosecutor. *Id.* "This final step involves evaluating the persuasiveness of the justification proffered by the prosecutor." *Id.* (quoting *Purkett v. Elem*, 514 U.S. 765, 768 (1995)) (internal citation omitted). In addition, Missouri law requires the Petitioner to bear the burden of proving that the Prosecutor's reasons for striking the juror are merely pretext for discrimination. *Jones v. Jones*, 938 F.2d 838, 844 (8th Cir. 1991).

6

The trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal. *See Hernandez v. New York*, 500 U.S. 352, 366 (1991); *See also Smulls v. Roper*, 535 F.3d 853, 861 (8th Cir. 2008); *Shurn v. Delo*, 177 F.3d 662, 665 (8th Cir. 1999). "Thus, regardless of the extent of the evidence considered by the state trial court, we may reject the trial court's factual findings only if those findings are proven incorrect 'by clear and convincing evidence.'" *Smulls*, 535 F.3d at 861. "Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding 'largely will turn on evaluation of credibility.'" *Hernandez*, 500 U.S. at 365 (quoting *Batson*, 476 U.S. at 98). Since there will seldom be much evidence on the issue of whether counsel's race-neutral reason should be believed, "the best evidence often will be the demeanor of the attorney who exercises the challenge." *Id.* "[E]valuation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Id.* Federal courts apply the same standard to factual determination made by the appellate court. *Smulls*, 535 F.3d at 865.

In this case, the trial court correctly applied *Batson's* three step inquiry. At trial, Petitioner made a prima facie showing after the Prosecution used a peremptory strike on Rashod O'Kelly, an African American venireperson. Petitioner met his burden by objecting to the strike and identifying Mr. O'Kelly as one of two African-Americans on the venire panel. The Prosecution fulfilled the second step by offering a race-neutral explanation for his decision. The Prosecution stated that the decision to strike Mr. O'Kelly was based on the fact that he was the only person on the panel to have been arrested as an adult. The trial judge accepted the Prosecution's explanation. The Petitioner sought to meet its burden by demonstrating that the Prosecution's reasons were merely pretext. To support his argument, Petitioner pointed to the

7

fact that a white venireman, Mr. Austin, had also been arrested as a juvenile, yet the Prosecution decided to not use a peremptory strike on him. The Prosecution responded by stating that he was "not interested in juvenile arrests." Based on these facts, the trial court found that Petitioner failed to meet its burden of demonstrating that the Prosecution's reasons were pretextual and denied Petitioner's *Batson* challenge.

After reviewing the record, the Court finds that Petitioner failed to demonstrate by "clear and convincing" evidence that the Prosecutions proffered reasons for striking the juror were merely pretext for discrimination. Petitioner argues that the "totality of the circumstances" show that the Prosecution's proffered reasons were pretext since both Mr. Kelly and Mr. Austin had been arrested. The Petitioner argues that this fact alone demonstrates that racial factors motivated the Prosecution's decision. However, the fact that Mr. Austin had been arrested as a juvenile does not provide "clear and convincing" evidence of any discriminatory intent by the Prosecution. While this discrepancy in the record raises questions about the motives of the Prosecution, "they are not so overwhelming in this case that they 'leave us with a definite and firm conviction that a mistake has been committed.'" *See Smulls*, 535 F.3d at 867 (quoting *Hernandez*, 500 U.S. at 370). The trial court had the opportunity to observe the entire voir dire process and to make rulings regarding peremptory challenges. Under applicable law, the trial court's determination as to this issue is entitled to deference, and Petitioner failed to meet his burden of demonstrating through "clear and convincing" evidence that the Prosecution proffered reasons were pretextual. Thus, Petitioner's second objection provides no basis for relief because he fails to demonstrate that the trial court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law. In addition, the

Petitioner fails to show that the court based its decision on an unreasonable determination of the facts presented at trial.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL DURING TRIAL (Claims Three, Four & Seven)

Petitioner claims that he received ineffective assistance of trial counsel in claims three, four, and seven, and he reiterates these claims in the third and fifth objections of Petitioner's Objections to Magistrate's Report and Recommendation. In claim three, Petitioner asserts that he received ineffective assistance of counsel because his counsel failed to make an opening statement. In claim four, Petitioner asserts that he was denied his right to testify at trial by Defense Counsel. In objection three, Petitioner contends that the Magistrate's findings of facts in reference to Claims three and four cannot be supported in the absence of an evidentiary hearing by the Court. In claim seven, Petitioner argues that he received ineffective assistance of counsel when Defense Counsel failed to object during Prosecutor's closing argument. Petitioner reasserts these complaints in objection number five of Petitioner's to Magistrate's Report and Recommendation. Each of these alleged claims will be addressed, in turn.

An ineffective assistance of counsel claim requires Petitioner to show (1) that counsel's conduct fell below the standard of professional reasonableness and (2) that there is a reasonable probability that the outcome would have been different had counsel acted professionally. *Strickland v. Washington*, 466 U.S. 668, 691 (1984) ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). "In determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001)

9

(quoting *Strickland*, 466 U.S. at 689). This standard is heightened in the context of a § 2254 petition, as the Petitioner must show both that he has satisfied the *Strickland* test, and that the state court applied *Strickland* "in an objectively unreasonable manner." *Underdahl v. Carlson*, 381 F.3d 740, 742 (8th Cir. 2004).

In ruling on these types of issues, District Courts must hold an evidentiary hearing "if the petitioner has alleged disputed facts, which if proved, would entitle him to habeas relief." *Newton v. Kemna*, 354 F.3d 776, 785 (8th Cir. 2004) (quoting *Smith v. Bowersox*, 311 F.3d 915, 921 (8th Cir. 2002) (internal citations omitted). "[I]f a petitioner received a fair hearing in state court and the dispute can be resolved based on the record, then a district court properly may dismiss a § 2254 petition without a hearing." *Culkin v. Purkett*, 45 F.3d 1229, 1234 (8th Cir. 1995) (quoting *Chandler v. Armontrout*, 940 F.2d 363, 366 (8th Cir.1991)). "The court may deny an evidentiary if such a hearing would not assist in resolving Petitioner's claims." *Id.* "In other words, even if the facts [the petitioner] seeks to prove are true, if those facts would not entitle him to relief (that is, if those facts would not show that the [state court] acted contrary to or unreasonably applied clearly established federal law), then the District Court did not abuse its discretion in denying [the petitioner's] request for an evidentiary hearing." *Id.* (quoting *Johnston v. Luebbers*, 288 F.3d 1048, 1059 (8th Cir. 2002) (internal citations omitted).

### 1. Failed to Present Opening Statement (Claim Three)

In claim three, Petitioner asserts that counsel provided ineffective counsel by failing to make an opening statement at the trial. The decision whether to make an opening statement is ordinarily an issue of trial tactics and strategy, and as result, Courts generally find that this decision is left to Defense Counsel. *See e.g., U.S. v. Nersesian*, 824 F.2d 1294, 1321 (stating that the decision whether to make an opening statement and when to make it is ordinarily a matter of

trial tactics and strategy which will not constitute the incompetence basis for a claim of ineffective assistance of counsel"); *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (stating that while opening and closing statements are not to be lightly waived in a capital case, it is well-settled that the decision to waive an opening or closing statement is a commonly adopted strategy, and without more, does not constitute ineffective assistance of counsel). *See also U.S. v. Washington*, 198 F.3d 721, 723-724 (8th Cir. 1999) (stating that strategic decisions left to counsel include all trial decisions other than the decision to plead guilty, waiving a jury trial, testifying on his or her own behalf, and taking an appeal). As a result, Petitioner must satisfy the *Strickland* test and also show that the state court applied *Strickland* "in an objectively unreasonable manner." *Underdahl*, 381 F.3d at 742.

Petitioner failed to show that counsel's conduct fell below the standard of professional reasonableness. At the evidentiary hearing, Defense Counsel testified that she chose not to present an opening statement because she did not want to get locked into a particular theory of defense. After reviewing the record, we agree with the Court of Appeals and the Magistrate Judge that Defense Counsel's decision not to present an opening statement was a trial strategy and did not fall below the standard of professional reasonableness. Even if the Court assumed that Petitioner made a sufficient showing on *Strickland's* first prong, Petitioner fails to demonstrate that the outcome would have been different if Defense Counsel had presented an opening argument. Defense Counsel was still able to highlight the inconsistencies of the State's evidence during the trial and during closing arguments. In addition, the Prosecution presented substantial evidence that Petitioner committed the charged crimes. Considering the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance and the absence of prejudice to Petitioner, this Court concludes that Defense Counsel's

actions did not amount to ineffective assistance of counsel. In addition, this Court finds that Petitioner failed to show that trial court applied the *Strickland* test in an "objectively unreasonable manner."

The Court also rejects Petitioner's third objection and finds that Petitioner is not entitled to a new evidentiary hearing on this claim. In this case, the state trial court held a post conviction hearing regarding Petitioner's claims of receiving insufficient counsel. At the hearing, the trial court heard testimony from several witnesses including the Petitioner and Petitioner's trial counsel. The transcript from this hearing provides a complete record of the evidentiary hearing and reveals that Petitioner had the opportunity to present evidence regarding Defense Counsel's decision to not present an opening argument. Petitioner raises no new facts that were not raised at the initial hearing. Therefore, holding a second evidentiary hearing on the same issue would not assist this Court in resolving Petitioner's claims, and as result Petitioner is not entitled to a second hearing on the matter.

### 2. Petitioner Prevented from Testifying at Trial (Claim Four)

Petitioner's fourth ground for relief asserts that he received ineffective assistance of counsel in that counsel prevented him from testifying during trial despite his express wish to do so. Individual defendants have a fundamental right to testify on their own behalf. *Rock v. Arkansas*, 483 U.S. 44, 51-53 (1987). "Since the right to testify is a fundamental constitutional guarantee, only the criminal defendant is empowered to waive it." *El-Tabech v. Hopkins*, 997 F.2d 386, 388 (8th Cir. 1993). "[D]efendant's waiver of his right to testify must be made knowingly and voluntarily." *Id.* To prevail on a claim for ineffective assistance of counsel on the grounds that Defense Counsel prevented Petitioner from testifying at trial, Petitioner must still demonstrate that his attorney's conduct was professionally unreasonable under the circumstances

and that his defense was prejudiced by the professionally unreasonable actions. *Id.* at 389. To establish prejudice, Petitioner must show that "counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Id.*

Applying the *Strickland* standard, Petitioner failed to show that his Defense Counsel's conduct was professionally unreasonable. The record shows that Defense Counsel advised Petitioner to not testify in light of the Prosecutor's anticipated cross examination, and as result, Petitioner decided to waive his right to testify. Defense Counsel testified that she told Petitioner that the decision to testify was his choice, and she advised him of the "benefits and potential cons in testifying." During the evidentiary hearing, Petitioner testified regarding the testimony he would have given at trial. Petitioner stated that he was at the scene and witnessed another individual commit the murder. Petitioner also testified that he had been convicted of unlawful use of a weapons and had been arrested for a series of crimes ranging from assault to drug charges. Furthermore, Petitioner testified that in light of Defense Counsel's advice, he had no choice but not to testify. Based on Petitioner criminal history and the fact that this testimony was inconsistent with Petitioner's previous statements, this Court does not find that Defense Counsel's conduct was professionally unreasonable. It was not unreasonable, especially in light of these circumstances, to consult with Petitioner and advise him not to testify. Considering the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, this Court concludes that Defense Counsel's actions in advising Petitioner not to testify did not amount to ineffective assistance of counsel.

The Court also rejects Petitioner's third objection and finds that Petitioner is not entitled to a new evidentiary hearing regarding this claim. In this case, the state trial court held a post-conviction hearing regarding Petitioner's claims of receiving insufficient counsel. At the hearing,

13

the trial court heard testimony from the Petitioner and Petitioner's trial counsel. The transcript from this hearing provides a complete record of the evidentiary hearing and reveals that Petitioner had the opportunity to present evidence regarding Petitioner's decision not to testify and the advice he received from Defense Counsel. Petitioner raises no new facts that were not raised at the initial hearing. Therefore, holding a second evidentiary hearing on the same issue would not assist this Court in resolving Petitioner's claims, and as result Petitioner is not entitled to a second hearing on the matter.

### 3. Defense Counselor Failed to Object to Prosecutor's Improper Closing Argument (Claim 7)

Petitioner asserts that Defense Counsel provided ineffective counsel by failing to object during the Prosecutor's closing argument. Petitioner points specifically to when the Prosecutor showed a photograph of the victim and made an improper argument to the jury. Petitioner reasserts his argument in his third objection to this Court by asserting that "trial counsel did not object when prosecutor appealed to the jury's passions by waving the victim's autopsy photograph during his summation." To prevail on this claim, Petitioner must satisfy the *Strickland* test. 466 U.S. at 687.

Petitioner failed the first prong of the *Strickland* test because he failed to demonstrate that trial counsel's performance was professionally unreasonable. During closing arguments, Defense Counsel objected on twelve separate occasions. The alleged improper argument challenged by Petitioner represented a small part of the Prosecutor's closing argument and came immediately following two simultaneous objections by Defense Counsel. Defense Counsel stated that she believed the argument was improper, but she chose not to object. Based on these facts, this Court finds that Defense Counsel made a strategic decision not to object. In addition, Defense

14

Counsel's decision not to object was not unreasonable given that the trial court overruled the objection she made immediately before the comment. Petitioner fails to demonstrate that Defense Counsel performed in a professionally unreasonable manner.

Secondly, Petitioner fails to demonstrate that the result of the proceeding would have been different had counsel objected. At trial, the Prosecution put forth substantial evidence that Petitioner committed the crime. Three witnesses identified Petitioner as the person who shot the victim. In addition, the post-conviction motion court determined that prosecutor's challenged comments did not constitute an improper argument. The Court cannot fault counsel for failing to object if such an objection could not result in relief. *See Burton v. Dormire*, 295 F.3d 839, 846 (8th Cir. 2002). Thus, this Court finds that Defense Counsel's failure to object to this closing argument was not unreasonable or prejudicial to Petitioner. The state court's finding that defense counsel was not ineffective is not contrary to, nor an unreasonable application of, Supreme Court precedent. Therefore, Petitioner's seventh claim for habeas relief is denied.

**D.     CLOSING ARGUMENTS (Claims Five & Six)**

Petitioner argues that the Prosecutor made improper arguments during his closing. In claim five, Petitioner asserts that the Prosecutor improperly told the jury that there was more evidence available that he did not present to the jury. In claim six, Petitioner asserts that the Prosecutor improperly asked the jury to convict petitioner in order to "stop the senseless violence and stop the madness, stop the killing." Petitioner reiterates his claims in objection four of Petitioner's Objections to Magistrate's Report and Recommendation. During closing argument, counsel may not "manipulate or misstate" evidence. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A prosecutor's argument violates due process if it infects the trial with unfairness. *Id*. The relevant question is whether the prosecutor's comments "so infected the trial with unfairness

15

as to make the resulting conviction a denial of due process." *Id.* A prosecutor's challenged statements must be viewed within the context of the entire trial. *Culkin,* 45 F.3d at 1235. "Improper prosecutorial remarks violate due process when there is a reasonable probability the remarks affected the trial's outcome." *Roberts v. Bowersox*, 137 F.3d 1062, 1066 (8th Cir. 1998).

Furthermore, under the Antiterrorism and Effective Death Penalty Act (AEDPA) standard of review, Petitioner must show that the state appellate court's adjudication of this claim was an unreasonable application of existing United States Supreme Court law. *See Weaver v. Bowersox*, 438 F.3d 832, 839-42 (8th Cir. 2006). The combination of the due process standard and the AEDPA standard of review, together with the federal habeas court's "less reliable vantage point for gauging the impact of closing argument on the overall fairness of the trial," results in an "exceptionally limited review" of this issue. *Sublett v. Dormire*, 217 F.3d 598, 600 (8th Cir.2000) (citing *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir.1999)).

Petitioner fails to demonstrate that Prosecutor's reference to additional evidence or the use of inflammatory language during his closing arguments to the jury violated Petitioner's due process rights. During closing arguments, Defense Counsel objected to the Prosecutor's plea that the jury "stop the killing," and the trial court overruled the objection. During Defense Counsel's closing arguments, the Prosecutor objected to Defense Counsel's statement that "The State has brought in all the evidence that they can summon...," and the Prosecutor replied by stating that "I'm going to object to 'all we had;' That misstates the facts of this case." The trial court denied Defense Counsel's subsequent request for a mistrial. When viewing these facts within the context of the entire record, Petitioner fails to demonstrate that these remarks denied him a fair trial. The record indicates that the Prosecution presented substantial evidence of Petitioner's guilt. In fact, three eyewitnesses identified Petitioner as the perpetrator of the crime. The record also indicates

16

that the Prosecutor's statements were isolated, brief, and not emphasized. As a result, Petitioner fails to demonstrate within a reasonable probability that these remarks affected the trial's outcome. Therefore, this Court denies Petitioner's fifth and sixth claims for relief.

## IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability may only be issued when "'the applicant has made a substantial showing of the denial of a constitutional right.'" *See Slack v. McDaniel*, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)); *see also Langley v. Norris*, 465 F.3d 861, 863 (8th Cir. 2006). Petitioner has made no such showing. Furthermore, the Court does not believe that reasonable jurists might find the Court's decision debatable or wrong, for purposes of issuing a certificate of appealability under 28 U.S.C. § 2253(c)(1)(A). *Slack*, 529 U.S. at 483-84. Therefore, the Court will not issue a certificate of appealability as to any claim raised in the Petition.

## V. CONCLUSION

Each of Petitioner's seven grounds for habeas relief are rejected, as outlined in the foregoing analysis. As a result, the Court will deny the Petition for Writ of Habeas Corpus and will not issue a certificate of appealability as to any claim raised in the Petition.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Darrell Huffman's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody [doc. #1] is **DENIED**.

Dated this 28th Day of September, 2009.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE